## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANDREW MORGAN,

    Plaintiff,

    v.

ALLISON CRANE & RIGGING LLC
*d/b/a Allison Crane & Rigging*,

    Defendant.

No. 4:21-CV-00533

(Chief Judge Brann)

## MEMORANDUM OPINION

### APRIL 18, 2023

Andrew Morgan, formerly an employee of Allison Crane & Rigging LLC ("Allison Crane"), was washing a wall in late 2020 while working in his capacity as an employee of Allison Crane. While twisting his body to perform that job, Morgan felt a "pop" in his back and experienced immediate back pain. He reported that pain to his employer, and later sought chiropractic treatment for his back pain; at the recommendation of Morgan's chiropractor, he was placed on light duty, although Morgan's chiropractor removed any bending or lifting restrictions after 48 days. Morgan was later terminated for allegedly failing to report for work, but Morgan asserts that he was actually terminated due to his back pain, as well as to prevent him from filing a workers' compensation claim. The evidence, however, fails to establish that Morgan's back pain was disabling, or that he ever reported to Allison

Crane an intent to file a workers' compensation claim. Accordingly, Morgan's claims cannot proceed to trial.

## I.      BACKGROUND

Morgan filed a complaint, which he later amended, against Allison Crane alleging that Allison Crane discriminated against him due to his actual or perceived disability, in violation of the Americans with Disabilities Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA"), and wrongfully discharged Morgan to prevent him from filing a workers' compensation claim.[1] Allison Crane filed an answer to the amended complaint, and the matter proceeded through discovery.[2]

Allison Crane has now filed a motion for summary judgment.[3] Allison Crane first argues that it is entitled to summary judgment as to Morgan's ADA and PHRA claims because Morgan has failed to establish either that he was disabled, or that he was perceived as disabled.[4] Specifically, Allison Crane notes that, while Morgan asserts he suffered from a herniated or bulged disk in his back, he has produced no evidence—other than his own testimony—to substantiate any medical impairment.[5]

Furthermore, Morgan was only moderately limited in his ability to lift objects during a 48 day period, missed no work, sought no further treatment, and now suffers no limitations due to his back issues, all of which, Allison Crane asserts,

---

1   Doc. 13.
2   Doc. 14.
3   Doc. 34.
4   Doc. 36 at 12-19.
5   *Id.* at 12-14.

demonstrates the absence of any disability.[6] Allison Crane also argues that Morgan was not regarded as disabled, since the evidence demonstrates that Morgan's supervisors did not believe that the injury was serious or would qualify for short-term disability, and minor, transitory impairments do not satisfy the "regarded as" test.[7] Allison Crane additionally argues that Morgan was not entitled to a reasonable accommodation since he was not disabled.[8]

Second, Allison Crane argues that it is entitled to summary judgment as to Morgan's wrongful discharge claim.[9] In that regard, Allison Crane notes that Morgan never filed a workers' compensation claim, never asked anyone to file a workers' compensation claim, and never had a discussion with anyone about filing a workers' compensation claim on his behalf, meaning that he engaged in no protected activity.[10]

Morgan responds that he has established a *prima facie* case of disability discrimination under the ADA and PHRA.[11] Morgan contends that the evidence establishes that he was diagnosed with a bulged or herniated disk, was placed on light duty with lifting restrictions, and experienced limitations of his major life activities, all of which satisfy the requirements for disability.[12] Furthermore, even if

---

[6] *Id.* at 14-16.
[7] *Id.* at 16-18.
[8] *Id.* at 18-19.
[9] *Id.* at 19-20.
[10] *Id.*
[11] Doc. 40.
[12] *Id.* at 11-14, 16-17.

he were not disabled, Morgan asserts that there remains a genuine issue of material fact as to whether Allison Crane regarded him as disabled, such that he has still established a *prima facie* case of discrimination.[13] Specifically, Morgan contends that his supervisor knew of the workplace injury, knew of the lifting restrictions imposed on Morgan, and was the sole decisionmaker who terminated Morgan's employment.[14]

Morgan further argues that he was entitled to a reasonable accommodation due to his documented back injury, and that Allison Crane failed to provide such an accommodation by scheduling Morgan to drive a truck for eight or more hours, despite Morgan's insistence that he could not sit for such a long period of time.[15] Morgan also contends that Allison Crane has failed to set forth a legitimate non-discriminatory reason for his termination and, in any event, the evidence is sufficient to establish that any such explanation would be pretextual.[16]

Finally, Morgan argues that summary judgment should be denied as to his wrongful discharge claim.[17] Morgan asserts that, because he reported his injury, his supervisors were aware of that injury, and those supervisors discouraged Morgan

---

[13] *Id.* at 14-17.
[14] *Id.* at 16.
[15] *Id.* at 18-21.
[16] *Id.* at 21-23.
[17] *Id.* at 23-27.

from filing a workers' compensation claim, he has sufficiently established that he engaged in protected activity.[18]

Allison Crane has filed a reply brief and Morgan has filed a sur reply brief, rendering this matter is ripe for disposition.[19] For the following reasons, the motion for summary judgment will be granted.

## II.   DISCUSSION

### A.   Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[20] Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[21] A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[22] Conversely, to survive summary judgment, a plaintiff must "point to admissible evidence that would be sufficient to show all elements of a prima facie case under applicable substantive law."[23]

---

[18]   *Id.* at 27.
[19]   Docs. 43, 47.
[20]   Fed. R. Civ. P. 56(a).
[21]   *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010).
[22]   *Clark*, 9 F.3d at 326.
[23]   *Id.*

The party requesting summary judgment bears the initial burden of supporting its motion with evidence from the record.[24] When the movant properly supports its motion, the nonmoving party must then show the need for a trial by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[25] The nonmoving party will not withstand summary judgment if all it has are "assertions, conclusory allegations, or mere suspicions."[26] Instead, it must "identify those facts of record which would contradict the facts identified by the movant."[27]

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[28] the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[29] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion."[30]

---

[24] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[25] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[26] *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

[27] *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002) (internal quotation marks omitted).

[28] *Liberty Lobby*, 477 U.S. at 252 (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871)).

[29] *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).

[30] Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018).

Finally, although "the court need consider only the cited materials, . . . it may consider other materials in the record."[31]

### B.    Undisputed Facts

In 2019 and 2020, Morgan was employed by Allison Crane as a Millwright Laborer.[32] During that employment, Morgan was supervised by, among others, Brian Bonislawski, who, by 2020, became the supervisor for Allison Crane's Williamsport, Pennsylvania location.[33] On September 29, 2020, Morgan injured his back while on the job.[34] Although Morgan completed his shift that day, he informed his coworkers and supervisor about the pain that he was experiencing.[35] Morgan continued to work for the remainder of the week, although he experienced pain and contemplated seeking medical treatment.[36]

Morgan states that, on October 1 or 2, 2020, he presented to a chiropractor who diagnosed Morgan with a bulged or herniated disk in the lower back.[37] No diagnostic testing confirmed the presence of a bulged or herniated disk, and Morgan did not seek medical treatment from anyone other than the chiropractor.[38] Morgan

---

[31]    Fed. R. Civ. P. 56(c)(3).
[32]    Doc. 35 ¶¶ 2, 12; Doc. 40-1 ¶ 2.
[33]    Doc. 35 ¶ 13; Doc. 40-1 ¶ 13.
[34]    Doc. 35 ¶¶ 16-18; Doc. 40-1 ¶¶ 16-18.
[35]    Doc. 35 ¶¶ 19-20; Doc. 40-1 ¶¶ 19-20.
[36]    Doc. 35 ¶¶ 21-22; Doc. 40-1 ¶¶ 21-22.
[37]    Doc. 35 ¶¶ 23-24; Doc. 40-1 ¶¶ 23-24.
[38]    Doc. 35 ¶¶ 26-27; Doc. 40-1 ¶¶ 26-27.

treated his injury through twice-weekly appointments with his chiropractor, but did not receive any prescription pain medication or surgery.[39]

On October 8, 2020 and again on October 22, 2020, Morgan's chiropractor wrote notes asking that, for a period of fourteen days, Allison Crane not require Morgan to do any bending or lifting of anything over fifteen pounds.[40] On November 5, 2020, the chiropractor wrote a note asking that Morgan be excused from bending or lifting anything over thirty pounds for the next thirty days.[41] Morgan provided these notes to his supervisors.[42]

On October 7, 2020, Morgan met with several supervisors and told those individuals that he was injured, that he was in pain, and that he was receiving medical care for his injury.[43] Morgan was informed that he would be placed on light duty at work but that there was no workers' compensation issue at that time.[44] Morgan's supervisors also stated that they did not believe that his injury was severe, that he could not file for unemployment, and that his injury did not qualify for short-term disability.[45]

Following his injury, Morgan researched how to open a workers' compensation claim, but did not discuss filing a workers' compensation claim with

---

[39]   Doc. 35 ¶¶ 28-29; Doc. 40-1 ¶¶ 28-29.
[40]   Doc. 35 ¶¶ 31-32.
[41]   Doc. 35 ¶ 33.
[42]   Doc. 35 ¶ 34; Doc. 40-1 ¶ 34.
[43]   Doc. 35 ¶¶ 35-37; Doc. 40-1 ¶¶ 35-37.
[44]   Doc. 35 ¶ 38; Doc. 40-1 ¶ 38.
[45]   Doc. 35 ¶¶ 39-41; Doc. 40-1 ¶¶ 39-41.

anyone at Allison Crane.[46] Morgan was also informed by his supervisors that they did not believe the injury constituted a workers' compensation matter.[47] Morgan was thereafter put on light duty while working at Allison Crane and continued to work fulltime—at the same wage—without missing any work until November 17, 2020.[48] On November 13, 2020, Morgan was disciplined for allegedly not wearing appropriate protective equipment at work.[49]

On November 17, 2020, Morgan was assigned to drive a truck to escort a crane from a job site in Syracuse, New York.[50] Morgan informed the dispatcher through a series of text messages that he could not perform the task assigned to him because it would involve an eight- or ten-hour drive, and Morgan had a bank appointment that he did not wish to miss.[51] Morgan also stated in his deposition that he had spoken with another dispatcher over the phone and stated that he could not perform the assigned task because "that long of a trip would inflame my back and I could have severe pain, that I would not be able to sit for that long."[52] On November 18, 2020, Morgan's employment with Allison Crane was terminated by Bonislawski,

---

[46] Doc. 35 ¶¶ 51-53; Doc. 40-1 ¶¶ 51-53.
[47] Doc. 40-1 ¶ 31; Doc. 44 ¶ 31.
[48] Doc. 35 ¶¶ 42-44; Doc. 40-1 ¶¶ 42-44.
[49] Doc. 35 ¶ 45; Doc. 40-1 ¶ 45.
[50] Doc. 35 ¶ 46; Doc. 40-1 ¶ 46.
[51] Doc. 35 ¶ 46; Doc. 40-1 ¶ 46. *See* Doc. 40-16 at 2 (test message exchanges between Morgan and the dispatcher).
[52] Doc. 40-4 at 13.

reportedly because Morgan failed to appear for his assigned job escorting the crane on November 17.[53]

Morgan's chiropractor removed any work restrictions related to the back injury on November 25, 2020.[54] Morgan has received no medical treatment for his back injury since that date, and he suffers no pain or limitations as a result of that injury, although he believes that it is possible that he could aggravate the injury in the future.[55] Morgan is currently employed by the Borough of Jersey Shore, Pennsylvania performing labor and maintenance, such as snow removal, grass cutting, and sidewalk work.[56]

### C.   Analysis

#### 1.   Disability Discrimination Under the ADA and PHRA

The Court first addresses Morgan's claim of disability discrimination. While Morgan brings his claims under both the ADA and PHRA, it is well established that "the same legal standard that applies to the ADA applies equally to disability discrimination claims under the PHRA" and, as such, it is proper to address both claims collectively.[57]

To demonstrate a *prima facie* case of disability discrimination under the ADA or PHRA, a plaintiff must establish three elements: "(1) s/he is a disabled person

---

[53]   Doc. 35 ¶¶ 48-49; Doc. 40-1 ¶¶ 48-49.
[54]   Doc. 35 ¶ 56; Doc. 40-1 ¶ 56.
[55]   Doc. 35 ¶¶ 57-60; Doc. 40-1 ¶¶ 57-60.
[56]   Doc. 35 ¶ 61; Doc. 40-1 ¶ 61.
[57]   *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 500 n.3 (3d Cir. 2010).

within the meaning of the ADA; (2) s/he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) s/he has suffered an otherwise adverse employment decision as a result of discrimination."[58] "For the purposes of the ADA, plaintiffs are disabled if they: (1) have a physical or mental impairment that substantially limits one or more of their major life activities; (2) have a record of such an impairment; or (3) are regarded as having such an impairment."[59]

Although "[t]he burden of establishing a *prima facie* case 'is not onerous,' . . . and presents a 'low bar' for employment-discrimination plaintiffs,"[60] the Court concludes that Morgan has not established the presence of an actual or perceived disability as required by the ADA and PHRA.

### a.    Actual Disability

The Court must first consider whether Morgan has adequately established the existence of an actual disability, either as a result or a bulged or herniated disk, or due to generalized back pain. As an initial matter, Morgan has failed to demonstrate the existence of a purported bulged or herniated disk in his back. Morgan points to a single piece of evidence in support of his assertion that he suffered from such an

---

[58]   *Eshleman v. Patrick Indus., Inc.*, 961 F.3d 242, 245 (3d Cir. 2020) (brackets and internal quotation marks omitted).

[59]   *Id.* (internal quotation marks omitted).

[60]   *Rice-Smith v. Misericordia Convalescent Home*, No. 1:20-CV-1473, 2022 WL 2231822, at *9 (M.D. Pa. June 21, 2022) (quoting *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 365 (3d Cir. 2008); *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006)).

injury—his own deposition testimony stating that his chiropractor had diagnosed him with "a bulged disk or a herniated disk in [his] lower back."[61] However, this recitation of what Morgan's chiropractor stated constitutes hearsay,[62] and the United States Court of Appeals for the Third Circuit has long held that "[h]earsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment."[63] Absent any admissible evidence of a bulged or herniated disk, Morgan has not demonstrated that he suffered from such an impairment, let alone that said impairment rendered him disabled.

It is true, as Morgan points out, that the Third Circuit has previously held that a plaintiff need not present medical evidence to substantiate an impairment if "the alleged impairment is within the comprehension of a jury that does not possess a command of medical or otherwise scientific knowledge" although, even in those circumstances, "a lack of medical testimony should be a factor cutting against a

---

[61] Doc. 40-4 at 10.

[62] This is an out-of-court statement and is clearly offered for the truth of the matter asserted— that Morgan was diagnosed with a disk injury, *See* Fed. R. Evid. 801(c) (defining hearsay), and no exception to the hearsay rule would appear to apply. Rule 804(4), related to statements made for medical treatment, would not apply since that Rule "only applies to a patient's statement made to a medical professional, rather than a medical professional's statement to a patient." *Plunkard v. Marks*, No. 1:18-CV-01536, 2021 WL 8013872, at *7 (M.D. Pa. May 4, 2021). Nor is there any evidence that the chiropractor's statement is "capable of being admissible at trial" such that it may be considered at the summary judgment stage. *Fraternal Ord. of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016). No evidence whatsoever—such as a declaration or deposition testimony—has been presented from the chiropractor, nor has Morgan "noted [his chiropractor's] availability to testify" at trial. *Id.* As such, the Court concludes that this statement is inadmissible hearsay that may not be considered.

[63] *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009).

plaintiff's claim of disability."[64] The Third Circuit has determined that "arm and neck pain[] are among those ailments that are the least technical in nature and are the most amenable to comprehension by a lay jury."[65] Relying on that holding, courts within this circuit have held that depression,[66] anxiety and posttraumatic stress disorder,[67] and learning disabilities[68] are within the comprehension of a lay jury such that medical evidence is not required to substantiate those impairments.

The Court, however, has been unable to locate any case holding that spinal impairments such as a bulged or herniated disk are within the comprehension of a lay jury. The injuries themselves may be fairly common, and a lay person may even be able to understand at a basic level how such an impairment could be limiting. Nevertheless, absent medical testimony or diagnostic tests, no lay person could reasonably conclude that an individual actually suffers from a bulged or herniated disk nor, absent such evidence, would a jury understand the severity of the ailment and its possible limiting effects. Consequently, the Court concludes that a bulged or herniated disk "is [not] within the comprehension of a jury that does not possess a command of medical or otherwise scientific knowledge"[69] and must therefore be

---

[64]   *Marinelli v. City of Erie, Pa.*, 216 F.3d 354, 360 (3d Cir. 2000).

[65]   *Id.* at 361.

[66]   *Est. of Murray v. UHS of Fairmount, Inc.*, No. CIV.A. 10-2561, 2011 WL 5449364, at *6 (E.D. Pa. Nov. 10, 2011).

[67]   *Nagle v. Comprehensive Women's Health Servs., P.C.*, No. 3:15-CV-0042, 2018 WL 1473833, at *13 (M.D. Pa. Jan. 19, 2018), *report and recommendation adopted*, No. 3:15-CV-0042, 2018 WL 1474545 (M.D. Pa. Mar. 26, 2018).

[68]   *Dorn v. Potter*, 191 F. Supp. 2d 612, 623 (W.D. Pa. 2002).

[69]   *Marinelli*, 216 F.3d at 360.

substantiated by medical evidence.[70] Because Morgan has failed to present such evidence, his ADA and PHRA claims cannot proceed based on his alleged disk impairments.

That still leaves the possibility that Morgan may proceed with claims based on his alleged generalized back pain, as no medical evidence is required to establish back pain as an impairment.[71] It is undisputed that Morgan's chiropractor placed bending and lifting restrictions on Morgan and, as a result, Allison Crane restricted Morgan to light duty at work.[72] It may be inferred that these restrictions were a result of the back pain that Morgan alleges he was then experiencing.[73] Because both "lifting" and "bending" qualify as major life activities, Morgan's back pain may constitute a physical impairment sufficient to qualify him as disabled under the ADA and PHRA.[74]

---

[70]  *Cf. Patrick v. Henry Cnty.*, No. 1:13-CV-01344-RWS, 2016 WL 2961103, at *4 (N.D. Ga. May 23, 2016) (holding that "meningitis and adhesive arachnoiditis are not the kinds of diseases that are generally understood by lay people" and therefore medical evidence substantiating the impairments was required).

[71]  *See Marinelli*, 216 F.3d at 361 (noting that arm and neck pain "are among those ailments that are the least technical in nature and are the most amenable to comprehension by a lay jury").

[72]  Doc. 35-2 at 8-12; Doc. 40-4 at 11.

[73]  Although the notes from Morgan's chiropractor do not state what condition limited Morgan's ability to bend or lift, drawing all reasonable inferences in Morgan's favor, it may be inferred that the limitation was related to the back pain that he reported to his supervisors. *See* Doc. 35-2 at 8-12 (chiropractor notes restricting the weight that Morgan may lift); Doc. 40-4 at 11 (Morgan discussing severe back pain and noting that he "was already on the weight restriction given to me by the chiropractor office").

[74]  *Wilson v. Iron Tiger Logistics, Inc.*, 628 F. App'x 832, 835 (3d Cir. 2015) (quoting 42 U.S.C. § 12102(2)(A)) (noting that bending and lifting are major life activities).

Again, however, Morgan's claimed disabling impairment runs into an insurmountable hurdle. The Third Circuit in *Macfarlan v. Ivy Hill SNF, LLC* reiterated that "[a] temporary non-chronic impairment of short duration is not a disability covered by the [ADA and PHRA]."[75] There, the court noted that, although the plaintiff was restricted in his ability to lift, those "temporary lifting limitations, which were removed only four months after first imposed, are the very definition of such a non-chronic impairment."[76] The Third Circuit therefore held that the plaintiff's "lifting restriction was not a qualifying disability under" either the ADA or the PHRA, and the grant of summary judgment in favor of the defendant had been appropriate.[77]

Here, Morgan's back pain and concomitant bending and lifting restrictions are even less amenable to a finding of disability than were those presented in *Macfarlan*. Lifting restrictions were first imposed on Morgan on October 8, 2020,[78] and it is uncontested that Morgan was released to full occupational duties with no restrictions on November 25, 2020—a mere 48 days after restrictions were first imposed.[79] Morgan acknowledges that, since that time, he suffers from no pain or limitations, and he is currently engaged in employment that requires heavy manual labor.[80] If

---

[75]   675 F.3d 266, 274 (3d Cir. 2012) (internal quotation marks omitted). *See also Bangura v. Pennsylvania*, 793 F. App'x 142, 145 n.3 (3d Cir. 2019) (same).

[76]   *Macfarlan*, 675 F.3d at 274.

[77]   *Id.* at 275.

[78]   Doc. 35-2 at 8.

[79]   Doc. 35 ¶ 56; Doc. 40-1 ¶ 56.

[80]   Doc. 35 ¶¶ 57-61; Doc. 40-1 ¶¶ 57-61.

four months of limited lifting restrictions[81] is insufficient to establish a disability, the Court cannot conclude that limited lifting restrictions for a period of 48 days may establish a disability.[82] Consequently, Morgan suffered from no disabling impairment under the ADA or PHRA.[83]

### b.    Regarded as Disabled

Simply because Morgan was not disabled does not, however, end this Court's inquiry, as Morgan may still pursue ADA and PHRA claims if he was "regarded as" disabled by Allison Crane.[84] The Third Circuit has held that "[a] plaintiff states a 'regarded as' claim if s/he 'establishes that he or she has been subjected to an action prohibited under the ADA because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.'"[85] "An employer regards a person as disabled when it misinterprets information about an employee's limitations to conclude that the employee is incapable of performing his or her job requirements.[86]

---

[81] The plaintiff in *Macfarlan* was limited to lifting no more than twenty pounds. 675 F.3d at 270.

[82] Nor is there any evidence in the record that would establish that Morgan's back pain is "episodic or in remission" such that it would qualify as a disability regardless of the short duration of that pain. 42 U.S.C. § 12102(4)(D).

[83] Similarly, Morgan cannot establish that he has a record of any such impairment, as he does not have "a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(1). And notably, Morgan does not argue that he has a record of such an impairment. *See* Docs. 40, 47.

[84] 42 U.S.C. § 12102(1)(C).

[85] *Eshleman*, 961 F.3d at 245 (brackets and internal quotation marks omitted).

[86] *Id.* (brackets and internal quotation marks omitted).

"However, the ADA limits 'regarded as' claims by excluding 'impairments that are transitory and minor.'"[87] "Accordingly, if the perceived disability is 'transitory and minor,' a plaintiff cannot state a 'regarded as' discrimination claim."[88] "The ADA defines 'transitory' as 'an impairment with an actual or expected duration of 6 months or less,' but does not define 'minor.'"[89]

Despite the absence of a clear cut rule regarding what constitutes a "minor" impairment, the Third Circuit has held that whether an impairment is minor must be considered on a "case-by-case basis" by examining "such factors as the symptoms and severity of the impairment, the type of treatment required, the risk involved, and whether any kind of surgical intervention is anticipated or necessary—as well as the nature and scope of any post-operative care."[90] To establish a defense that an impairment is transitory and minor, "an employer must establish that the perceived impairment is objectively *both* transitory and minor," meaning "that 'transitory' is just one part of the two prong 'transitory and minor' exception."[91]

Here, Morgan's impairment was indisputably transitory—he was placed under lifting restrictions for only 48 days, well below the six-month cutoff for a transitory impairment, and there is no indication that Allison Crane believed the restrictions would last for an extended duration. Turning to the question of whether

---

[87]   *Id.* at 246 (quoting 42 U.S.C. § 12102(3)(B)).
[88]   *Id.*
[89]   *Id.* (quoting 42 U.S.C. § 12102(3)(B)).
[90]   *Id.* at 249.
[91]   *Id.* at 247-48.

Morgan's back pain[92] was minor, the Court concludes that it was. Neither the symptoms nor the severity of the injury supports the conclusion that it was anything other than minor because, while Morgan experienced back pain, he missed no work, was only mildly limited in his ability to bend and lift, and suffered from no other restrictions. Further, the treatment required was fairly minor, consisting of chiropractic treatments that lasted just over two months with no surgical intervention required, and no pain medications prescribed.[93] Accordingly, no reasonable juror could conclude that Morgan's back pain was anything other than minor.[94]

Importantly, Allison Crane did not think that Morgan's injury was anything other than transitory and minor. Morgan continued to work without interruption, the chiropractor's restrictions on Morgan's ability to bend and lift were fairly negligible and always temporary in nature, and Morgan's supervisors directly stated that they felt his impairment was not severe and did not impact his ability to work at light duty.[95] Consequently, "[t]he undisputed evidence shows that [Allison Crane] did not consider [Morgan] in any way disabled," meaning that Morgan cannot establish that he was "regarded as" disabled under the ADA.[96]

---

[92] The Court need not consider whether a bulged or herniated disk would qualify as a minor impairment because, as discussed above, Morgan has failed to establish the presence of a bulged or herniated disk, and Morgan also has not established that Allison Crane believed that Morgan suffered from a bulged or herniated disk.

[93] Doc. 40-9 at 2-3.

[94] *Cf. Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 260 (3d Cir. 2014) (concluding that a broken finger that resulted in the loss of the use of three fingers for approximately two months and merely slowed down the plaintiff's ability to work was transitory and minor).

[95] Doc. 35-1 at 11.

[96] *Macfarlan*, 675 F.3d at 275 (quoting *Wilson v. MVM, Inc.,* 475 F.3d 166, 179 (3d Cir. 2007)).

In sum, Morgan has failed to establish that he had a disability or was regarded as having a disability during his employment with Allison Crane, and he cannot establish a *prima facie* case of disability discrimination. The Court will therefore grant Allison Crane's motion for summary judgment as to Counts One and Two of the amended complaint.

### 2.    Wrongful Discharge Claim

Turning then to Morgan's claim for wrongful discharge, under Pennsylvania law "[a]n employee may bring a cause of action for a termination of [his employment] only in the most limited circumstances, where the termination implicates a clear mandate of public policy."[97] The Supreme Court of Pennsylvania has held that such a public policy is implicated when an employee files a claim for workers' compensation and, therefore, employees may pursue a claim for "retaliatory discharge for the filing of a workers' compensation claim."[98] Although that court has only held that an employee is protected from retaliation after filing a workers' compensation claim, this Court and others have determined that employees may "seek redress for workers' compensation retaliation without actually filing a workers' compensation claim."[99]

---

[97]   *Weaver v. Harpster*, 975 A.2d 555, 563 (Pa. 2009).

[98]   *Shick v. Shirey*, 716 A.2d 1231, 1232 (Pa. 1998).

[99]   *Bamat v. Glenn O. Hawbaker, Inc.*, No. 4:18-CV-01898, 2019 WL 3387660, at *2 (M.D. Pa. July 26, 2019).

To establish a *prima facie* case of wrongful discharge for filing a workers' compensation claim, a plaintiff must demonstrate that he "(1) engaged in protected activity, (2) suffered an adverse employment action either after or contemporaneously with the protected activity, and (3) there is a causal connection between the protected activity and adverse action to a workers' compensation retaliation claim under Pennsylvania law."[100] When an employee intends to file a workers' compensation claim, but never actually files such a claim prior to any alleged retaliation, to demonstrate that he engaged in protected activity the employee "must (1) report the work-related injury; and (2) express to his employer his intent to file a workers' compensation claim."[101]

The Court concludes that Morgan's wrongful discharge claim fails because he has not demonstrated that he engaged in protected activity, and thus has not established a *prima facie* case of wrongful discharge. The parties agree that Morgan did not file a workers' compensation claim, and he therefore must demonstrate that he both reported his work-related injury and expressed to Allison Crane his intent to file a workers' compensation claim.[102]

As to the first element, the evidence is plainly sufficient to establish—for the purpose of summary judgment—that Morgan reported his workplace injury. Morgan

---

[100] *Smith v. Tervita Env't Servs., Corp.*, No. CV 21-295, 2022 WL 4926662, at *2 (W.D. Pa. Oct. 4, 2022).

[101] *Bamat*, 2019 WL 3387660 at *2.

[102] *Id.*

testified at his deposition that, on the day of the injury, he reported his injury to his immediate supervisor and, after receiving chiropractic treatment, informed all of the relevant decisionmakers at Allison Crane of both the injury and chiropractic treatment.[103] And, in response to notes from Morgan's chiropractor imposing weight restrictions, Allison Crane placed Morgan on light duty.[104]

However, Morgan cannot establish that he ever informed anyone at Allison Crane of a desire to file a workers' compensation claim. To the contrary, while Morgan researched how to open a workers' compensation claim, he never discussed filing such a claim with anyone at Allison Crane, nor is there any evidence that he ever—in any manner—expressed to anyone at Allison Crane a desire to file a workers' compensation claim.[105] Morgan's failure to express such an intent to anyone at Allison Crane is fatal to his wrongful discharge claim.[106]

To be sure, Morgan alleges that Allison Crane discouraged him from filing a workers' compensation claim.[107] But regardless, the focus must always remain "on what the plaintiff did to engage in protected activity," rather than on what the employer may have done.[108] Even if one may logically infer from Allison Crane's behavior in actively discouraging Morgan from filing a claim that it (or rather,

---

[103]   Doc. 35-1 at 9-11.
[104]   Doc. 35 ¶ 36.
[105]   Doc. 35 ¶¶ 51-53; Doc. 40-1 ¶¶ 51-53.
[106]   *Bamat*, 2019 WL 3387660 at *3.
[107]   Doc. 40-4 ¶ 24.
[108]   *Bamat*, 2019 WL 3387660 at *2.

Morgan's supervisors) subjectively believed that Morgan may have desired to file a claim for workers' compensation, as this Court has previously made clear, such a subjective belief on the part of the employer is insufficient to establish that a plaintiff engaged in protected activity.[109] Rather, "even if [Allison Crane] believed that [Morgan] intended to file a workers' compensation claim and was aware of his injury, that does not absolve [Morgan] from the requirement that he express to [Allison Crane] his intent to file a [workers'] compensation claim."[110]

Consequently, the evidence creates no genuine issue of material fact as to whether Morgan established that he engaged in protected activity. He did not, and has thus failed to establish a *prima facie* case of wrongful discharge. Allison Crane's motion for summary judgment will therefore be granted as to Count Three.

## III.   CONCLUSION

For the foregoing reasons, the Court will grant Allison Crane's motion for summary judgment.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[109] *Id.*
[110] *Id.* at *3.