## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW MORGAN, | No. 4:21-CV-00533 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| ALLISON CRANE & RIGGING LLC d/b/a ALLISON CRANE & RIGGING, | |
| Defendant. | |

## MEMORANDUM OPINION

### JUNE 3, 2025

## I.    BACKGROUND

On March 23, 2021, Plaintiff Andrew Morgan filed a three-count Amended Complaint against Defendant Allison Crane & Rigging LLC ("Allison Crane").[1] Following the completion of discovery, Allison Crane moved for summary judgment. In its April 18, 2023 Memorandum Opinion, this Court granted Defendant's motion for summary judgment, and Morgan promptly appealed this decision.[2] The United States Court of Appeals for the Third Circuit disposed of this appeal on September 4, 2024 by vacating in part, reversing in part, and affirming in part this Court's April 18, 2023 ruling.[3] Allison Crane then filed a Second Motion for Summary Judgment on December

---

[1]    Amended Compl., Doc. 13.
[2]    Apr. 18, 2023 Mem. Op, Doc. 48; Mandate of USCA, Doc. 60.
[3]    *Id.*

13, 2024.[4] That motion is now ripe for disposition; for the reasons that follow, it is denied.

## II.    STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[6] A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[7] Conversely, to survive summary judgment, a plaintiff must "point to admissible evidence that would be sufficient to show all elements of a prima facie case under applicable substantive law."[8]

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[9] the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[10] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly

---

4    Second Motion for Summary Judgment, Doc. 65.
5    FED. R. CIV. P. 56(a).
6    *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010).
7    *Clark v. Mod. Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993).
8    *Id.*
9    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871)).
10   *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).

address another party's assertion of fact as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion."[11] Finally, although "the court need consider only the cited materials, . . . it may consider other materials in the record."[12]

## III.    UNDISPUTED FACTUAL BACKGROUND

Both parties have incorporated their statements of material facts from the initial motion for summary judgment. Accordingly, the Court readopts its statement of the undisputed facts from its April 18, 2023 Memorandum Opinion, as reproduced below.

In 2019 and 2020, Andrew Morgan was employed by Allison Crane as a Millwright Laborer.[13] During that employment, Morgan was supervised by, among others, Brian Bonislawski, who, by 2020, became the supervisor for Allison Crane's Williamsport, Pennsylvania location.[14] On September 29, 2020, Morgan injured his back while on the job.[15] Although Morgan completed his shift that day, he informed his coworkers and supervisor about the pain that he was experiencing.[16] Morgan continued to work for the remainder of the week, although he experienced pain and contemplated seeking medical treatment.[17]

---

[11] FED. R. CIV. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018).
[12] FED. R. CIV. P. 56(c)(3).
[13] Doc. 35 ¶¶ 2, 12; Doc. 40-1 ¶ 2.
[14] Doc. 35 ¶ 13; Doc. 40-1 ¶ 13.
[15] Doc. 35 ¶¶ 16-18; Doc. 40-1 ¶¶ 16-18.
[16] Doc. 35 ¶¶ 19-20; Doc. 40-1 ¶¶ 19-20.
[17] Doc. 35 ¶¶ 21-22; Doc. 40-1 ¶¶ 21-22.

Morgan states that, on October 1 or 2, 2020, he presented to a chiropractor who diagnosed Morgan with a bulged or herniated disk in the lower back.[18] No diagnostic testing confirmed the presence of a bulged or herniated disk, and Morgan did not seek medical treatment from anyone other than the chiropractor.[19] Morgan treated his injury through twice-weekly appointments with his chiropractor, but did not receive any prescription pain medication or surgery.[20]

On October 8, 2020 and again on October 22, 2020, Morgan's chiropractor wrote notes asking that, for a period of fourteen days, Allison Crane not require Morgan to do any bending or lifting of anything over fifteen pounds.[21] On November 5, 2020, the chiropractor wrote a note asking that Morgan be excused from bending or lifting anything over thirty pounds for the next thirty days.[22] Morgan provided these notes to his supervisors.[23]

On October 7, 2020, Morgan met with several supervisors and told those individuals that he was injured, that he was in pain, and that he was receiving medical care for his injury.[24] Morgan was informed that he would be placed on light duty at work but that there was no workers' compensation issue at that time.[25] Morgan's

---

[18]   Doc. 35 ¶¶ 23-24; Doc. 40-1 ¶¶ 23-24.
[19]   Doc. 35 ¶¶ 26-27; Doc. 40-1 ¶¶ 26-27.
[20]   Doc. 35 ¶¶ 28-29; Doc. 40-1 ¶¶ 28-29.
[21]   Doc. 35 ¶¶ 31-32.
[22]   Doc. 35 ¶ 33.
[23]   Doc. 35 ¶ 34; Doc. 40-1 ¶ 34.
[24]   Doc. 35 ¶¶ 35-37; Doc. 40-1 ¶¶ 35-37.
[25]   Doc. 35 ¶ 38; Doc. 40-1 ¶ 38.

supervisors also stated that they did not believe that his injury was severe, that he could not file for unemployment, and that his injury did not qualify for short-term disability.[26]

Following his injury, Morgan researched how to open a workers' compensation claim, but did not discuss filing a workers' compensation claim with anyone at Allison Crane.[27] Morgan was also informed by his supervisors that they did not believe the injury constituted a workers' compensation matter.[28] Morgan was thereafter put on light duty and continued to work fulltime—at the same wage—without missing any work until November 17, 2020.[29] On November 13, 2020, Morgan was disciplined for allegedly not wearing appropriate protective equipment at work.[30]

On November 17, 2020, Morgan was assigned to drive a truck to escort a crane from a job site in Syracuse, New York.[31] Morgan informed the dispatcher through a series of text messages that he could not perform the task assigned to him because it would involve an eight- or ten-hour drive, and Morgan had a bank appointment that he did not wish to miss.[32] And Morgan also stated in his deposition that he had spoken with another dispatcher over the phone and stated that he could not perform the assigned task because "that long of a trip would inflame my back and I could have severe pain,

---

[26]  Doc. 35 ¶¶ 39-41; Doc. 40-1 ¶¶ 39-41.
[27]  Doc. 35 ¶¶ 51-53; Doc. 40-1 ¶¶ 51-53.
[28]  Doc. 40-1 ¶ 31; Doc. 44 ¶ 31.
[29]  Doc. 35 ¶¶ 42-44; Doc. 40-1 ¶¶ 42-44.
[30]  Doc. 35 ¶ 45; Doc. 40-1 ¶ 45.
[31]  Doc. 35 ¶ 46; Doc. 40-1 ¶ 46.
[32]  Doc. 35 ¶ 46; Doc. 40-1 ¶ 46. *See* Doc. 40-16 at 2 (test message exchanges between Morgan and the dispatcher).

that I would not be able to sit for that long."[33] On November 18, 2020, Morgan's employment with Allison Crane was terminated by Bonislawski, reportedly because Morgan failed to appear for his assigned job escorting the crane on November 17.[34]

Morgan's chiropractor removed any work restrictions related to the back injury on November 25, 2020.[35] And Morgan has received no medical treatment for his back injury since that date, and he suffers no pain or limitations as a result of that injury, although he believes that it is possible that he could aggravate the injury in the future.[36] Morgan is currently employed by the Borough of Jersey Shore, Pennsylvania performing labor and maintenance, such as snow removal, grass cutting, and sidewalk work.[37]

## IV.    DISCUSSION

The only issue presently before the Court is whether summary judgment should be granted as to Morgan's failure to accommodate and retaliation claims under the Americans with Disabilities Act ("ADA") and Pennsylvania Human Relations Act ("PHRA"). The parties extensively briefed the issue of whether Defendant waived its ability to seek summary judgment on these claims. As Morgan's claims survive summary judgment on the merits, I instead proceed directly to that analysis.

---

[33]    Doc. 40-4 at 13.
[34]    Doc. 35 ¶¶ 48-49; Doc. 40-1 ¶¶ 48-49.
[35]    Doc. 35 ¶ 56; Doc. 40-1 ¶ 56.
[36]    Doc. 35 ¶¶ 57-60; Doc. 40-1 ¶¶ 57-60.
[37]    Doc. 35 ¶ 61; Doc. 40-1 ¶ 61.

## A.    The Retaliation Claims[38]

### 1.    Plaintiff's Prima Facie Case

"To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."[39] Allison Crane only challenges the third element.

"Evidence of timing between protected activity and adverse action, alone, ordinarily is insufficient to demonstrate a causal link unless the timing is 'unusually suggestive' of retaliatory motive."[40] The Third Circuit has observed that "[a]n inference of 'unduly suggestive' temporal proximity begins to dissipate where there is a gap of three months or more between the protected activity and the adverse action."[41] Our Court of Appeals then applied this three month time frame to conclude that "[a] jury could find that the proximity" between an email complaint to human resources about

---

[38]   The Court applies the same standard to Plaintiff's PHRA retaliation claim "except where there is something specifically different in its language requiring that it be treated differently." *Soutner v. Penn State Health*, 841 F. App'x 409, 414 (3d Cir. 2021) (quoting *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002)). "Neither party points to any relevant difference." *Id.*

[39]   *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (internal citations excluded).

[40]   *McLaughlin v. Fisher*, 277 F. App'x 207, 218 (3d Cir. 2008) (quoting *Krouse*, 126 F.3d at 503).

[41]   *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 221 (3d Cir. 2017) (citing *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007)).

discrimination to the employee's termination six weeks later "is enough to infer causation."[42]

The final note from Morgan's chiropractor was provided a mere thirteen days before his termination.[43] Defendant's attempt to argue that this timing is not unduly suggestive is unpersuasive. Thirteen days does not approach the length of time the Third Circuit has suggested casts doubt on causation. Further, there is disputed evidence before the Court that only one day passed between Morgan's latest request for an accommodation and his termination. Defendant's argument that Plaintiff was only terminated after failing to show for the November 17, 2020 job assignment improperly asks the Court to ignore, or assign little weight to, the fact Morgan claimed he raised his accommodations with the dispatcher on November 16, 2020. He was then terminated a day later after failing to complete that job assignment. As such, Plaintiff has adequately established his prima facie case.

### 2.    Defendant's Non-Retaliatory Reason

But Allison Crane can adequately rebut this prima facie case by pointing to Morgan's employment issues on November 13 and November 17, 2020. These qualify as "a legitimate, non-retaliatory reason for its adverse employment action."[44] Accordingly, the Court must determine whether Plaintiff can adequately rebut this non-retaliatory reason.

---

[42] *Qing Qin v. Vertex, Inc.*, 100 F.4th 458, 477 (3d Cir. 2024).
[43] Doc. 40, Ex. 10 (Plaintiff's Notes).
[44] *Jalil v. Avdel Corp.*, 873 F.2d 701, 706 (3d Cir. 1989).

### 3.    Plaintiff's Rebuttal of the Non-Retaliatory Reason

"The ultimate burden of persuasion, which remains always with the plaintiff, may . . . be met by proving by a preponderance of the evidence that the alleged reasons proffered by the defendant were pretextual and that the defendant intentionally discriminated against the plaintiff."[45] "Circumstantial evidence may suffice to challenge the defendant's alleged reasons as pretextual."[46]  If Morgan can rebut any proffered explanation, "[s]ummary judgment is inappropriate" due to the existence of "a factual issue regarding the employer's true motivation for discharge."[47]

Allison Crane's Absentee Policy states that "[r]epeated occurrences of being tardy, absent or not following the policy will result in verbal counseling, written counseling, and/or suspension or termination of employment."[48] These options exemplify the company's progressive disciplinary policy, but Allison Crane reserved the ability to directly escalate to termination, "especially when it falls under gross misconduct."[49] Brian Bonislawski agreed that "call[ing] out of work six times within the span of a month" would qualify as gross misconduct.[50] But when asked about excessive absenteeism, Bonsilawski hedged by noting that "it depends on the

---

[45]    *Id.*
[46]    *Id.*
[47]    *Id.*
[48]    Doc. 40, Ex. 21 (Absenteeism Policy).
[49]    Doc. 40, Ex. 7 (Bonislawski Dep.) at 41:4-15. Bonislawski described gross misconduct as issues such as "theft, fraud, deliberate falsification of records, fighting, assault on another person or insubordination." *Id.* at 41:4-9.
[50]    *Id.* at 41:23-42:2.

situation."[51] For health or family issues, Defendant will "really work with people quite a bit" when compared with an employee who simply fails to show for work.[52] Repeated failures to show "would be more or less" initially addressed with progressive discipline but could eventually fall under gross misconduct.[53]

Due to Morgan's prior verbal warning and his failure to perform the escort job, Bonislawski did not consider an alternative form of discipline for Morgan.[54] He in fact characterized Morgan's failure to show as "insubordination, which falls under gross misconduct . . . ."[55] Bonislawski also did not reach out to Morgan to discuss why he failed to perform the November 17 escort job nor did he review the text message conversation between Morgan and the dispatcher until after he terminated Morgan.[56] Plaintiff also provided evidence of other employees who were not terminated until repeated incidents of absenteeism or tardiness had occurred.

These factual issues are sufficient to rebut the non-retaliatory reason provided by Defendant. They suggest an inconsistent application of Defendant's disciplinary policies to Morgan after he claims to have made an additional accommodation request. As such, I deny the Second Motion for Summary Judgment as to Morgan's retaliation claims.

---

[51] *Id.* at 43:7-17.
[52] *Id.* at 43:7-17.
[53] *Id.* at 43:7-17.
[54] *Id.* at 67:14-21. The Court notes that Morgan testified that "90 percent of the people that would come into the yard to do yard work did not have one form of the required PPE on at any given time. And they never were wrote up about it." Doc. 40, Ex. 4 (Morgan Dep.) at 52:7-11.
[55] Doc. 40, Ex. 7 (Bonislawski Dep.) at 67:14-21.
[56] *Id.* at 66:10-11, 67:22-24.

## B.      Failure to Accommodate Claim[57]

"Discrimination under the ADA encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities."[58] "A plaintiff bringing an ADA failure-to-accommodate claim must establish: (1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have reasonably accommodated."[59]

"To determine the appropriate reasonable accommodation[,] it may be necessary for the [employer] to initiate an informal, interactive process with the [employee] . . . ."[60] "[A]n employer can show its good faith in many ways, such as: meeting with the employee; requesting information about the employee's condition and limitations; asking the employee what accommodation she wants; showing some sign of having considered her request; and offering and discussing available alternatives when the request is too burdensome."[61] "[W]here there is a genuine dispute about whether the employer acted in good faith, summary judgment will typically be precluded."[62]

---

[57] The Court applies the same legal standard for both an ADA and PHRA failure to accommodate claim. *Soutner v. Penn State Health*, 841 F. App'x 409, 415 (3d Cir. 2021) (citing *Colwell v. Rite Aid Corp.*, 692 F.3d 495, 499 n.3 (3d Cir. 2010)).

[58] *Ruggiero v. Mount Nittany Med. Ctr.*, 736 F. App'x 35, 39 (3d Cir. 2018) (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)).

[59] *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 157 (3d Cir. 2017).

[60] *Ruggiero*, 736 F. App'x at 39 (quoting *Taylor*, 184 F.3d at 311).

[61] *Ruggiero*, 736 F. App'x at 39.

[62] *Lewis v. Univ. of Pa.*, 779 F. App'x 920 (3d Cir. 2019) (quoting *Taylor*, 184 F.3d at 318).

The notes from Morgan's chiropractor restricted him "from doing any bending or lifting anything at work over" certain weight limits.[63] Allison Crane believes this did not provide notice that Morgan could not drive. Bonislawski indicated that "typically a doctor would write that they didn't want him to drive . . . because they know they have to bend to get to work, to drive a vehicle."[64] Bonislawski also conceded that driving a vehicle requires you to be "somewhat bent"[65]

But Defendant seemingly never created a list of appropriate duties compatible with Morgan's limitations.[66] Instead, the relevant dispatcher, Jared Houseknecht, identified activities he viewed as light duty.[67] These tasks included "escorting equipment" and "light yard work duties."[68] Accordingly, Houseknecht viewed the November 17, 2020 escort job as a light duty task despite acknowledging the trip would have been nine-to-ten hours long.[69] Notably, Houseknecht could not recall whether Morgan had been assigned any lengthy escort jobs prior to the November 17, 2020 assignment,[70] and he asserted, in contradiction to Morgan's own testimony, that Plaintiff never informed him there was an assignment he could not complete for medical reasons.[71]

---

[63] Doc. 40, Ex. 10 (Plaintiff's Notes).
[64] Doc. 40, Ex. 7 (Bonislawski Dep.) at 36:2-9.
[65] *Id.* at 33:18-35:8.
[66] Doc. 40, Ex. 12 (Houseknecht Dep.) at 68:17-19.
[67] *Id.* at 68:24-69:2.
[68] *Id.* at 69:17-19.
[69] *Id.* at 33:23-34:5, 35:22-36:2.
[70] *Id.* at 37:18-38:4.
[71] *Id.* at 38:5-10.

Finally, on November 17, 2020, Allison Crane ultimately retrieved the crane from New York but left a trailer with its counterweights that had to be retrieved the following day.[72] It took Houseknecht approximately twenty minutes to identify this alternative action plan, but he indicated that it did come at an additional cost as the company "had to send another truck driver to go up to New York to get the equipment."[73]

The disputed record before the Court prevents it from granting summary judgment on these claims. There are disputes as to what Plaintiff's work restrictions actually were and whether he complained about his inability to complete the November 17, 2020 assignment due to his back pain. These disputes implicate both Allison Crane's knowledge of Morgan's required accommodations for his disability and its efforts to accommodate that disability. Under the narrative created by Plaintiff, Defendant failed to engage in any kind of process with him when faced with an additional accommodation request. While Allison Crane may ultimately be able to convince a jury that Morgan "was just trying to get out of work,"[74] it is not the Court's role to make that determination. Accordingly, I deny summary judgment on these claims as well.

---

[72]  *Id.* at 79:3-5.
[73]  *Id.* at 42:21-24, 43:15-20.
[74]  Doc. 74 at 10.

## V.    CONCLUSION

Due to the factual disputes before the Court, I will deny Defendant's Second

Motion for Summary Judgment.

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge
